IN RE APPLICATION FOR TAX EXEMPTION BY DANA W. MOREY FOUNDATION.

(No. 346—Decided March 4, 1970.)

*Mr. David F. Allen,* for appellant, Dana W. Morey Foundation.

*Mr. Richard E. Parrott,* prosecuting attorney, for appellee, Union County Treasurer.

GUERNSEY, J. This is an appeal under the provisions of Section 5717.04, Revised Code, from an order of the Board of Tax Appeals denying an application filed on behalf of the Dana W. Morey Foundation, hereinafter referred to as the foundation, for exemption from taxation for the tax year 1969 of 9.41 acres of land owned by it in Union County. The facts are undisputed.

The foundation was created in 1953 as an *inter vivos* trust for charitable purposes. The settlor is now deceased, and the Chemical Bank New York Trust Company is the successor and existing trustee. The trust agreement provides that after the decease of the settlor "the distribution of trust funds and the general policy of the Foundation shall be directed by an Advisory Committee," which has been in existence, and is empowered "to direct the Trustee to pay and distribute all or a part of the net income of the Foundation," for the purposes of the trust, and "by unanimous vote or action, may at any time appropriate for distribution for the uses and purposes herein mentioned any part or all of the principal of the trust fund."

Pursuant to the purposes set forth in the trust instrument, on September 5, 1968, the trustee, also hereinafter referred to as the lessor, with the approval of the advisory committee, entered into a lease agreement with the Board of Trustees of the Union County Memorial Hospital and with the Board of County Commissioners of Union County, which boards operate a county hospital, pursuant to Section 339.01 *et seq.,* Revised Code, on property adjoining the tract in question. The lease agreement provides for the construction by the lessor of a 40 bed extended-care facility

on the lessors land, hereinafter referred to as the Center, "to be used to administer, maintain and operate an extended care and related hospital care facility by the Lessee, as determined by the Lessee," for the term of 20 years from the availability of the Center "to the Lessee for occupancy and use." In consideration thereof the lessee agreed to pay to the lessor (1) $1 per year; (2) an amount each year equalling the annual depreciation on the building (taken in the fastest manner consistent with acceptable and customary standards of hospital accounting), but not less than $30,000 or more than $60,000 per year; and (3) an amount each year equal to the payments due on any therein defined construction loan or mortgage given by the lessor for the purpose of financing the project, such payments, however, not to exceed $3,000 monthly or $36,000 annually.

The lease makes further provision for a "controlling board" of twelve members. The funded depreciation paid to the lessee "shall be used exclusively for health care purposes in Union County as determined and ordered by the 'controlling board,' " limited, however "to the improvements and additions to the 'Center' and Memorial Hospital as it [the controlling board] deems appropriate for the development of the overall care facility," including the retirement of indebtedness on the Center. The lessee also agreed to construct an enclosed corridor joining the hospital to the Center and "to administer and maintain the leased facilities in a manner consistent with the operation of a public health facility, strictly complying with the law with regard to admission of patients without regard to race, creed, color, or sex."

On July 1, 1969, at the time of the hearing before the attorney-examiner for the Board of Tax Appeals, it was testified that construction of the Center had commenced in 1968 and it had a completion date of November 15, 1969; that the term "extended care" did not contemplate that the Center would become a nursing home; "that it is intended that it be an extension of acute care, a halfway point between acute care and a patient's home or a nursing home"; and that it is contemplated that charity patients will be included in the patients to be admitted to the Center.

Upon submission the Board of Tax Appeals denied the application to exempt the real property involved, under the provisions of Section 5709.12, Revised Code, relying on the authority of *Lincoln Memorial Hospital* v. *Warren,* 13 Ohio St. 2d 109, and citing *Zangerle* v. *State, ex rel. Gallagher,* 120 Ohio St. 147, for the reason that "to exempt real property from taxation on the ground that it is used exclusively for charitable purposes the ownership of the property and its use must coincide." The appellant foundation assigns as error that the decision of the Board of Tax Appeals is unreasonable and unlawful.

As the decision of the board was certified only to the foundation and the Union County Auditor (who had recommended that the exemption be granted), counsel for these parties alone appeared in the appeal and sought, by consent, for this court to order the exemption. However, Section 5713.08, Revised Code, specifically provides that "No additions shall be made to such exempt lists nor additional items of property exempted under such sections without the consent of the Board of Tax Appeals * * * ," and the "auditor shall follow the orders of the board given under this section." Under such provisions the auditor, or his counsel, has no power of consent, a consent decree or order is not authorized, and the order of the Board of Tax Appeals stands until reversed as provided by law.

The statutory provision involved is that contained in the last sentence of Section 5709.12, Revised Code, prescribing that "Real * * * property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation."

In *Jones, Treas.,* v. *Conn* (1927), 116 Ohio St. 1, it was held that under the provision of the Ohio Constitution permitting exemption of "institutions used exclusively for charitable purposes" "personal property belonging to an institution of public charity is exempt from taxation only when used exclusively for charitable purposes, and, if such personal property is invested for financial purposes during the period before the charity was being dispensed by the institution, it is not exempt from taxation during such period." The court also stated, page 14, "We see absolutely

234

no distinction, from the standpoint of principle, between real estate and personal property for the purpose of this decision."

The *Jones* rule remained unmodified for many years. Compare *Wehrle Foundation* v. *Evatt, Tax Commr.* (1943), 141 Ohio St. 467. However, in *Good Samaritan Hospital Assn. of Sandusky* v. *Glander, Tax Commr.* (1951), 155 Ohio St. 507, involving a nurses' home for a hospital already being operated by the landowner, the Supreme Court held:

"*Per Curiam.* As the record discloses that since on and before tax-lien day 1950 the property in question, acquired by appellant for use for a charitable purpose, was undergoing repairs and remodeling to condition it for the charitable use for which it was acquired, and there being nothing in the record to show that during such time it had been used for a noncharitable purpose, the Board of Tax Appeals was in error in denying the exemption. * * * "

Thereafter, with relation to the exemption of church property under the provisions of Section 5709.07, Revised Code, the whole subject of intended use, as compared to present actual use, was extensively discussed by Judge Matthias in his opinion in *Holy Trinity Protestant Episcopal Church* v. *Bowers* (1961), 172 Ohio St. 103, and the Supreme Court held:

"A religious institution which purchases vacant land for the purpose of erecting a house of worship thereon is entitled to have such land exempted from taxation, where such institution is actively working toward use of such land for the public benefit; and the intent to make such a use of the land may be evidenced by a showing that plans had been prepared and funds were available, or were to be available, to effectuate actual construction of such house of worship within a reasonable time from the filing of the application for exemption."

That case was then cited as controlling authority in the case of *Cleveland Memorial Medical Foundation* v. *Perk* (1967), 10 Ohio St. 2d 72, where the court authorized exemption of a parcel of land purchased by the taxpayer

for the relocation of a general hospital which it had been operating and construction plans and funding for such purpose were in progress.

Meanwhile, in *Philada Home Fund* v. *Board of Tax Appeals* (1966), 5 Ohio St. 2d 135, in an opinion dealing primarily with the character of the use, concurred in by three other members of the court, Judge Brown stated, page 139:

" * * * The test is present exclusive use for charitable purposes. *Wehrle Foundation* v. *Evatt, Tax Commr.,* 141 Ohio St. 467. The future intended use test applied by this court in *Good Samaritan Hospital Assn. of Sandusky* v., *Glander, Tax Commr.,* 155 Ohio St. 507, has application only to real property of public or existing, *established and operating institutions* for charitable purposes in which the *imminently intended use is clearly and exclusively charitable.* The reason for exemption is *present benefit to the general public* sufficient to justify the loss of tax revenue. * * * " (Emphasis added.)

However, in Judge Schneider's dissent in that case, concurred in by Chief Justice Taft and Judge O'Neill, the following appears at page 148:

"Such is the present posture of the Constitution and the statutory enactments pursuant thereto. The conclusion follows inescapably that real and tangible property shall be exempt from taxation (1) if it belongs to a nonprofit institution, (2) if that institution is so constituted that its property and energies are used exclusively for charitable purposes, that is, undiluted by fraternal, benevolent, educational or religious purposes, and (3) if the exemption thus created does not transgress the limitations of Section 2, Article I of the Constitution, so as to confer an unreasonable benefit on the property of the institution and to deny the equal protection of the laws to those not similarly benefited."

Subsequently, in *Crestview of Ohio, Inc.,* v. *Donahue, Tax Commr.* (1968), 14 Ohio St. 2d 121, based primarily on the character of the use, a similar majority of the court denied exemption for a parcel of land upon which was lo-

cated the Lake Park Hospital and Nursing Care Center, a place of institutional convalescence and nursing home care operated by a nonprofit corporation for paying patients only. Chief Justice Taft and Judge Schneider again dissented, with Judge O'Neill not participating. However, in *Carmelite Sisters, St. Rita's Home,* v. *Bd. of Review,* 18 Ohio St. 2d 41, decided on April 30, 1969, in an opinion written by Justice Duncan and concurred in by all the members of the court except Justice Zimmerman and Justice Matthias, the Supreme Court decided that *the care of the aged and infirm* by a home operated by a corporation not for profit constitutes activities confined exclusively to the rendition of service for its charitable purposes and specifically overruled the *Crestview case* in its application to the exemption of the convalescent and nursing home. The *Philada Home case* was distinguished on the ground that no services were provided there other than those provided to a lessee of any age in any apartment building and the home "did not care for its residents in ways they could not care for themselves."

From the *Carmelite Sisters case* we conclude that Chief Justice Taft and Justices O'Neill and Schneider have abandoned the position which they took in the *Philada Home case,* that the operation of same was for a charitable purpose, and are now satisfied with the distinction implicit in these two cases, in paragraph two of the syllabus of *Vick* v. *Cleveland Memorial Medical Foundation* (1965), 2 Ohio St. 2d 30, approved therein, and in the *Crestview case,* that all services connected with the care of the aged and infirm in a nonprofit institutional convalescence and nursing home are for charitable purposes, notwithstanding that such services are paid for, or that a surplus is created in the fund of the institution, no part of which has been, or is to be, diverted to private profit. We also conclude from the *Carmelite Sisters case* that the Supreme Court now adheres to the view, conclusion and definition of the dissent in the *Philada Home case,* hereinbefore quoted, as to when real and tangible property shall be exempt from taxation.

This line of authority and that definition remove the emphasis from present exclusive use *of the property* for charitable purposes as set forth in the *Jones case, supra,* and place the emphasis on the nonprofit and exclusively charitable service character *of the institution,* exempting the property used by the institution in carrying out that charitable service.

What then is the effect, if any, of this line of authority and definition on the rule, if any, of *Zangerle* v. *State, ex rel. Gallagher* (1929), 120 Ohio St. 139, and *Lincoln Memorial Hospital* v. *Warren* (1968), 13 Ohio St. 2d 109, relied on by the Board of Tax Appeals. In the *Zangerle case,* although six members of the court were in agreement on constitutional and statutory grounds, that ownership and use must coincide, *i. e.,* that the taxpayer owner must also be the charitable user, judgment was entered, without authoritative opinion, finding the order of the Tax Commission in ordering the exemption proper because three of the four judges in the majority found in their concurring opinion that ownership and use *did* coincide and joined a fourth judge who concluded that the order of the Tax Commission could not be reviewed in the proceeding before the court. The remaining three judges decided that the charitable user was not a bona fide owner. The *Zangerle case* is not, therefore, conclusive upon the proposition that exemption must be denied if ownership and charitable use *do not* coincide.

The *Lincoln Memorial Hospital case,* in which two judges did not participate, is ambiguous in its decision. The owner taxpayer was a corporation organized *for profit,* and the charitable user was a nonprofit corporation. Although the court seems to recognize a rule of law arising from the *Zangerle case* that ownership and charitable use must coincide, before affirming the decision of the Board of Tax Appeals denying exemption it observes, "Besides it is obvious from the financial setup described that a large majority of those who availed themselves of the hospital facilities were patients who paid for the attention and accommodations they received and that nonpaying charitable

patients were decidedly in the minority." (This hardly conforms to the view of the *Carmelite Sisters case* thereafter decided.)

Nor do we derive anything authoritative from the case of *Parkwood Villa, Inc.,* v. *Auditor,* 13 Ohio St. 2d 111. Although decided the same day as and affirmed "on the authority of" the *Lincoln Memorial case,* the *Parkwood Villa case* involved an application, apparently by a corporation for profit, for the remission of taxes and *penalties* for the years 1961 through 1966, on property sold on land contract to a church, without title ever having been conveyed, and the owner having subsequently foreclosed the church's equity in same. As part of the *per curiam* opinion the court concluded that "the applicant is not entitled to remission of taxes and penalties under the clear language of Section 5713.08 of the Revised Code"; no doubt, because the taxes and penalties had not been paid in full to the date on which the application for exemption was filed.

We observe, too, the case of *Dayton* v. *Haines, Aud.* (1951), 156 Ohio St. 366, which, in effect, holds with regard to public property that public ownership and public use must coincide, and Judge Taft's dissent thereto where he concluded that "since the property was public property and used only for public purposes, it comes squarely within the words of the statute providing for tax exemption." We particularly note that this case was thereafter specifically overruled in *Dayton* v. *Haines, Aud.* (1959), 169 Ohio St. 191. As the rationale for the later decision, Judge Taft stated:

"Although the elements of ownership of the real property in the instant case are partly vested in the lessor and partly in the lessee, no one else has any interest of ownership whatever in that real property. Hence, since both the lessor and lessee are public bodies, there is nothing but a public ownership of that property, and the property is, to use the words of Section 5709.08, Revised Code, 'public property.' The board found and it is conceded that this 'public property' is 'used exclusively for a public purpose,' within the meaning of the words of that statute. The stat-

ute specifies that such property so used 'shall be exempt from taxation.' In order to hold otherwise, this court would have to revise that statute.''

We thus have arrived at a point in the development of the law pertaining to the exemption, where emphasis on charitable use of the property involved has given way to an emphasis on the nonprofit and exclusively charitable service character of the owner of the property charitably used; where the decisions tending to support coincidence of ownership and charitable use are ambiguous and are not sound authority for that proposition of tax law; where there are no specific and definitive decisions denying exemption where ownership is by a nonprofit institution of an exclusively charitable service character and the property is used by another nonprofit or public institution of an exclusively charitable service character; and where, with regard to the exemption, under Section 5709.08, Revised Code, of "public property used exclusively for a public purpose," the Supreme Court has discarded any rule of coincidence of public ownership and public use.

We also have arrived at the point in taxation exemption cases where we no longer have to resort to tortuous construction of the statutes in the light of any supposed limitations contained in Section 2 of Article XII of the Constitution, for it has been concluded that the General Assembly has plenary power to select subjects for exemption limited only by the Bill of Rights and not by any other supposed constitutional limitations. *Denison University* v. *Board of Tax Appeals* (1965), 2 Ohio St. 2d 17. There being no limitations under the Bill of Rights applicable here, we are then left only with an interpretation, in the light of controlling or interpretative Supreme Court decisions, which we have hereinbefore discussed, of the simple statutory provision that "Real and tangible personal property belonging to institutions that is used exclusively for charitable purposes shall be exempt from taxation.''

There can be no doubt from the provisions of the foundation trust agreement, from the provisions of the lease, and from the testimony, that the foundation is a

nonprofit institution so constituted that its property and energies are used exclusively for charitable purposes, including providing for the care of the aged and infirm. There can also be no doubt from the provisions of the statutes (Section 339.01 *et seq.*, Revised Code) and the lease that the lessee is a public charitable institution devoted to using property under its control, including the property in question, exclusively for charitable purposes and, specifically, for providing care to the aged and infirm. There can be no doubt from the provisions of the lease and from the testimony that the real property in question from before tax-lien date in 1969 to the present is being used exclusively for charitable purposes. There can thus be no doubt that the situation comes within the literal terms of the statute authorizing exemption.

Likewise, following the rationale of *Dayton* v. *Haines, Aud.* (1959), 169 Ohio St. 191, although the elements of ownership of the real property in the instant case are partly vested in the lessor and partly in the lessee, no one else has any interest of ownership whatever in that real property. Hence, since both the lessor and lessee are charitable institutions, there is nothing but ownership of that property by nonprofit institutions of charitable service character, and the propety is, to use the words of Section 5709.12, Revised Code, "Real * * * property belonging to institutions." It is undisputed that this "Real * * * property belonging to institutions" is "used exclusively for charitable purposes," within the meaning of the words of that statute. The statute specifies that such property so used "shall be exempt from taxation." In order to hold otherwise, this court would have to revise that statute.

The decision of the Board of Tax Appeals is, therefore, unreasonable, and unlawful, the same is reversed and vacated, and final judgment is entered allowing the exemption applied for.

*Decision reversed.*

COLE, P. J., and YOUNGER, J., concur.