BETH HAMIDROSH HAGODOL OHAVE EMUNA ANSHE GRODNA, APPELLANT, *v.* KINNEY, COMMISSIONER OF TAX EQUALIZATION, APPELLEE.

(No. 47013—Decided April 5, 1984.)

*Mr. Jacob A. H. Kronenberg,* for appellant.

*Ms. Christine Tanoury Mesirow,* for appellee.

DAY, C.J. In this case Beth Hamidrosh Hagodol Ohave Emuna An-

she Grodna, an orthodox Jewish congregation (appellant), appeals the decision of the Board of Tax Appeals ("BTA") denying it a refund of taxes paid for tax year 1979. For the reasons adduced below, the decision is affirmed.

## I

In August 1978, the appellant entered into an agreement with the University Heights Masonic Lodge for the purchase of the Masonic Temple for use as a synagogue. The purchase price was $500,000, $100,000 of which was paid within five days of the signing of the agreement. The $100,000 downpayment was secured by a mortgage back to the appellant-purchaser, conditional upon the failure of the seller to convey legal title at closing. Closing was in April 1979. During the eight months intervening between August 1978 and April 1979, the appellant was permitted some use of the premises, and in the fall of 1978, held religious services there for the high holy days. In the summer of 1979, following renovation of the premises, regular services began.

Upon application to the Commissioner of Tax Equalization (appellee), the appellant was granted an exemption from taxation on its newly acquired property for tax year 1980. The application for refund for taxes paid in 1979 was denied. On appeal to the BTA, the order of the commissioner was affirmed.

The appellant assigns two errors:

Assignment of Error No. 1:
"The Board of Tax Appeals erred in determining that exemption for the year involved (1979) could not be granted because the appellant did not have 'exclusive use' of the premises as of tax lien date (January 1, 1979)."

Assignment of Error No. 2:
"The Board of Tax Appeals erred in determining that exemption could not be granted for 1979 because appellant did not have legal title to the premises as of tax lien date."

The assignments will be considered in reverse order.

## II

Several statutes have a potential relevance to decision in this case. Unless indicated otherwise, all statutory references are to the versions effective at the time of the decisions below.

First, there is the exempted property statute (R.C. 5713.08) which provides in pertinent part:

"Taxes and penalties, which have accrued after the property was first used for the exempt purpose, but in no case prior to the date of acquisition of the title to said property by applicant, may be remitted by the auditor, with the consent of the commissioner."

The issue here is what sort of "title" must be acquired, to qualify for a refund? Then a secondary issue arises — if title was acquired in this case, when was it?

Next is the exemption statute for schools, churches, and colleges (R.C. 5709.07). To qualify for a remission under the statute an exempt use must be shown. The language relevant to public schoolhouses and public worship houses occurs in the first sentence of R.C. 5709.07:

"Public schoolhouses and houses used *exclusively* for public worship, the books and furniture therein, and the ground attached to such buildings necessary for the proper occupancy, use, and enjoyment thereof, and not leased or otherwise used with a view to profit, public colleges and academies and all buildings connected therewith, and all lands connected with public institutions of learning, not used with a view to profit, shall be exempt from taxation." (Emphasis added.)

The crucial question under this subsection is how much use must be proved to show "exclusive use" under the

statute? The answer is found in case law (see Section V, *infra*).

The general charitable exemption,[1] which apparently may or may not include religious uses, is found in R.C 5709.12:

"* * * Real and tangible personal property belonging to institutions that is used *exclusively* for charitable purposes shall be exempt from taxation." (Emphasis added.)

Again, the question arises, how much use is "exclusive use"? Here the answer is given by statute, in R.C. 5709.121:

"Real property and tangible personal property belonging to a charitable or educational institution or to the state or a political subdivision, *shall be considered as used exclusively* for charitable or public purposes by such institution, the state, or political subdivision, if it is either:

"(A) Used by such institution, the state, or political subdivision, or by one or more other such institutions, the state, or political subdivisions under a lease, sublease, or other contractual arrangement:

"(1) As a community or area center in which presentations in music, dramatics, the arts, and related fields are made in order to foster public interest and education therein [emphasis added];

"(2) For other charitable, educational, or public purposes;

"(B) Otherwise made available under the direction or control of such institution, the state, or political subdivision for use in furtherance of or incidental to its charitable, educational, or public purposes and not with the view to profit."

Note that the definition applies only where the "institution" to which the property "belongs" is itself "charitable" or "educational." And the statute does not determine the status of a religious organization as a charitable educational institution.

Finally, under R.C. 5717.04, appellate review is limited to determining whether the decision below is "unreasonable or unlawful,"[2] see *Citizens Financial Corp.* v. *Porterfield* (1971), 25 Ohio St. 2d 53, 57 [54 O.O.2d 191].

III

The BTA found that:

"On tax lien date, January 1, 1979, the appellant did not have *legal title* to the subject nor did the appellant have *exclusive use* of the premises. Therefore, the Board finds that the appellant is not entitled to a refund for taxes paid for tax year 1979." (Emphasis added.)

Why the 1979 tax lien date is significant in this context is not apparent. For the sole purpose of the tax lien appears to be "to guarantee the payment of taxes by those owners upon whom a levy is made." See *State, ex rel. Summit Cty. Bd. of Edn.*, v. *Bd. of Edn.* (1976), 45 Ohio St. 2d 210, 214 [74 O.O.2d 323]. The lien attaches by operation of law and has no relation to when, or even if, the tax actually accrues. Cf. *State, ex rel. Donahey,* v. *Roose* (1914), 90 Ohio St. 345, 351-352. And in the event tax does accrue, the general rule has been said to forbid remission, abatement or com-

---

[1] The appellee challenges the ability of the appellant to claim a refund based on the charitable exemption because of its failure to cite R.C. 5709.12 in its application to the commissioner. But the section was cited in its notice of appeal to the BTA, and recited by the BTA in its decision. The BTA was aware of the additional theory for the claim, and the appellant is not precluded from claiming error under the section.

[2] Upon a determination of unreasonableness or unlawfulness, the court "shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification." R.C. 5717.04.

promise except as authorized by statute. *State, ex rel. Donsante,* v. *Pethtel* (1952), 158 Ohio St. 35, 39 [48 O.O. 3]; *Interstate Motor Freight System* v. *Donahue* (1966), 8 Ohio St. 2d 19, 20 [37 O.O.2d 305].

The remission statute is precisely such authority. It requires only that the exempt use be in place before the tax accrued and that the claimant have "title" to the property for the refund period claimed. Thus, the tax lien date seems irrelevant, but in any event is not dispositive of any issue in this case.

## IV

For purposes of claiming a refund, equitable title is sufficient, *Gastineau* v. *Kinney* (App. 1982), Baldwin, Ohio Tax Service, 3-200, 3-201. In the present case, equitable title passed to the appellant by virtue of the binding contract for purchase and sale between it and the Masonic Lodge. Note also that in *Gastineau,* equitable title was implicitly deemed sufficient proof of "belonging" under R.C. 5709.12 to permit the charitable exemption. Cf. *In re Application of Dana W. Morey Foundation* (1970), 21 Ohio App. 2d 230, 239-240 [50 O.O.2d 377], and *Jones* v. *Conn* (1927), 116 Ohio St. 1, 10.

Accordingly, Assignment of Error No. 2 is well-taken but for reasons which will appear is not dispositive of the case.

## V

The discussion of the tax lien date under Section III, *supra,* is equally relevant to the finding that the appellant did not have "exclusive use" of the premises as of January 1, 1979. For there is no indication in the relevant statutes or cases that the exemption must have vested as of the tax lien date to permit a refund. So long as the claimant has "title," the right to remission begins "after the property was first used for the exempt purpose" (R.C. 5713.08), whatever and whenever that may be.

The decision of BTA does not make clear whether the *appellant* failed to prove exclusive use under the religious exemption or the general charitable exemption. Although the underlying facts of proof are the same in both instances, the standards of proof are different. "Exclusive use" under R.C. 5709.07 requires proof that the property was "used primarily for public worship." *Bishop* v. *Kinney* (1982), 2 Ohio St. 3d 52, 53-54. At least for the period before the appellant took full possession of the property, the BTA apparently concluded that the appellant's burden of proof was unmet. This conclusion is supported by the evidence. For there is no indication in the record what, if any, other activities went on in the building besides the appellant's high holy day services. The conclusion that the property was not used primarily for religious purposes is reasonable.

The situation is different, however, under the general charitable exemption (R.C. 5709.121) where the definition of exclusive use is given by statute. To prove *exclusive* use under the code provisions, a charitable institution need only show *use* for a charitable purpose, R.C. 5709.121(A)(2); or under section (B), that the premises be "[o]therwise made available under the direction or control of such institution * * * for use in furtherance of or incidental to its charitable * * * purposes * * *." It is enough if the claiming charitable institution defines its purpose and then shows that the property is used in furtherance of, or incidental to, its purpose, *American Chemical Soc.* v. *Kinney* (1982), 69 Ohio St. 2d 167, 172 [23 O.O.3d 197]; *Galvin* v. *Masonic Toledo Trust* (1973), 34 Ohio St. 2d 157, 160 [63 O.O.2d 242].

Assuming the statute applies to the appellant's case at all, there may have been sufficient proof adduced to permit a reasonable finding of exclusive use under the statutory definition. However, exclusive use under the charitable exemption statute is immaterial in the

present because the Supreme Court of Ohio has recently decided that a primarily religious institution is not charitable and thus "not entitled to tax exemption under R.C. 5709.12 and 5709.121." *Summit United Methodist Church* v. *Kinney* (1982), 2 Ohio St. 3d 72, 73.

Assignment of Error No. 1 is not well-taken. This necessary conclusion disposes of the claim to exemption adversely to the appellant.

## VI

The judgment is affirmed.

*Judgment affirmed.*

PARRINO and NAHRA, JJ., concur.