**AFFILIATED MEDICAL TRANSPORT, INC., Appellant,**

v.

**STATE TAX COMMISSION OF MISSOURI, et al., Respondents.**

No. 69032.

Supreme Court of Missouri, En Banc.

Dec. 15, 1987.

Michael B. McKinnis, James E. Reynolds, St. Louis, for appellant.

Elkin L. Kistner, Asst. City Counselor, James J. Wilson, City Counselor, St. Louis, for respondents.

DONNELLY, Judge.

This is an appeal from denial of an exemption from taxation of real and personal property in the City of St. Louis.

Affiliated Medical Transport, Inc. was incorporated on November 7, 1983, as a Missouri not-for-profit corporation for the purpose of providing mobile emergency medical care to the community on behalf of the St. Louis University Hospitals. In 1983, St. Louis University purchased and simultaneously transferred certain assets to Affiliated for no consideration. The University also made approximately $300,000 in capital expenditures for Affiliated in 1984. The University itself is a tax exempt entity. It could have retained the property in issue and used it to perform the services directly but the University decided to conduct the services through a controlled not-for-profit corporation in order to insulate the University's other assets from the potential liability that could result from the conduct of the high-risk activities associated with providing mobile emergency medical services.

Affiliated offers its services to the entire community. It routinely determines prior to providing its emergency medical transportation service whether patients are covered by insurance or whether they have the ability to pay for services. It periodically denies emergency medical transportation to indigent patients. Over five percent of its revenues fall under a provision for nonpaying allowances and doubtful accounts. Services also are provided to medicare and

---

medicaid patients in excess of the reimbursements available to Affiliated from these programs. As of September 1984, Affiliated had received a net profit from its operations as an emergency medical transportation service of $32,000. Not all of the indigent care rendered by Affiliated is reflected in its financial statements because much of Affiliated's nonpaying care is reimbursed by the University and reflected in the University's consolidated financial summary. Affiliated testified that its rates would increase in proportion to the rate of increase in salaries and other operational costs. All receipts of Affiliated are transferred into the University's main account, and cannot be withdrawn without the signature of an officer of the University.

Article 5 of Affiliated's Articles of Incorporation provides that Affiliated

[I]s organized exclusively for charitable, scientific and educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1954 ... including, for such purposes, to provide mobile medical and medical transport services....

Article 5 further states that:

No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to, its directors, officers or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distribution in furtherance of the purposes set forth in this Article 5.

Articles 10 and 6 provide that upon dissolution or liquidation of Affiliated, all the assets of Affiliated shall be distributed to the University, and that no person shall be named a director of Affiliated without prior approval of the President of the University. Affiliated is exempt from federal income tax and gifts to Affiliated are deductible as charitable contributions for the purposes of the Missouri income tax and the Federal income, gift and estate taxes.

The real property in issue is a combination office and garage. It houses ambulances and equipment which comprise the personal property in issue. The property is used in delivering mobile emergency medical services to the community.

Affiliated was denied the exemption from real and personal property taxes provided by section 137.100(5), RSMo, and such property was placed on the general assessment roll for the City of St. Louis for 1984. Affiliated appealed to the Board of Equilization of the City of St. Louis and then to the State Tax Commission of Missouri on the ground that the property is used for charitable purposes. Affiliated's requests for relief were denied. Affiliated paid the taxes under protest and sought review of the Commission's decision in the circuit court pursuant to section 536.100, RSMo. The circuit court affirmed the Commission's decision.

Affiliated asserts on appeal that this Court "has exclusive jurisdiction over this appeal under Article V, § 3 of the Missouri Constitution because the appeal involves the construction of the revenue laws of this State." We must disagree.

In *Franciscan Tertiary Province v. State Tax Commission*, 566 S.W.2d 213 (Mo. banc 1978), and its progeny, this Court has established the criteria for determining whether property shall be exempt under section 137.100:

(1) The property "must be dedicated unconditionally to the charitable activity." *Franciscan*, 566 S.W.2d at 224. "[I]t must be actually and regularly used *exclusively* for the purposes purely charitable as 'charity' is defined in *Salvation Army v. Hoehn*, 354 Mo. 107, 114, 115, 188 S.W.2d 826, 830 (1945)." *Barnes Hospital v. Leggett*, 589 S.W.2d 241, 244 (Mo. banc 1979). *Salvation Army* defines charity as:

[A] gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.

(2) The property must "be owned and operated on a not-for-profit basis" so "that there will be no profit, presently or prospectively, to individuals or corporations." *Franciscan*, 566 S.W.2d at 224; *Sunday School Bd. of Southern Baptist Convention v. Mitchell*, 658 S.W.2d 1, 5 (Mo. banc 1983). The property may operate in the black, even on a fairly regular basis, but the profit must be "achieved incidentally to accomplishment of the dominantly charitable objective" and not as a "primary goal of the project." *Id.* Any profit earned from the use of the property "must be devoted to attainment of the charitable objectives of the project.... [A]n exemption will not be granted covering property which houses a business operated for the purpose of gaining a profit, even though it is turned over to a parent organization to be used for ... religious or charitable purposes." *Franciscan*, 566 S.W.2d at 224.

Given the establishment of such criteria, this appeal involves questions of application of a revenue law already construed by this Court and, therefore, jurisdiction of this appeal lies in the Eastern District of the Court of Appeals. *Sperry Corporation v. Wiles*, 695 S.W.2d 471, 472 (Mo. banc 1985); *Stout Industries, Inc. v. Leachman*, 699 S.W.2d 129, 130 (Mo.App. 1985).

The cause is ordered transferred to the Eastern District of the Court of Appeals for review of the decision of the Commission in light of the above criteria.[1] Mo. Const. art. V, § 11; *see,* section 536.140, RSMo 1986; *Fleming Foods of Mo., Inc. v. Runyan*, 634 S.W.2d 183, 184 (Mo. banc 1982).

BILLINGS, C.J., and WELLIVER, ROBERTSON, RENDLEN and HIGGINS, JJ., concur.

BLACKMAR, J., dissents in separate opinion filed.

---

**BLACKMAR, Judge, dissenting.**

This case has been briefed and argued here. I would exercise our discretion as we did in *Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 196 (Mo. banc 1972) in retaining the case rather than transferring it. The distinction between "construction" and "application" of the revenue laws is not an easy one. Inasmuch as the factual situation shown by this record has not been determined previously by the Court, and is not closely related to the facts of *Franciscan Tertiary Province v. State Tax Commission*, 566 S.W.2d 213 (Mo. banc 1978), counsel understandably filed notice of appeal in this Court. The respondents mentioned the jurisdictional question in their brief, but did not file a motion to transfer. If we are to transfer a case, we should inquire into the jurisdictional issue prior to argument. Otherwise there is a waste of time and effort and an additional burden on the judicial system.

Unless a novel point of construction clearly appears, counsel should be guided by the principal opinion and should file notice of appeal in tax cases with the court of appeals. If either party considers that original jurisdiction is here, there may be an application for transfer, or the court of appeals may order the transfer on its own motion.

Inasmuch as the Court has elected to transfer the case, I express no opinion on the merits.

---

**1.** It should be noted that persons who desire to attack the above criteria may petition for transfer to this Court "for the purpose of reexamining the existing law...." Mo. Const. art. V, § 10.