**HOME BUILDERS ASSOCIATION OF GREATER ST. LOUIS, Plaintiff/Appellant,**

**v.**

**ST. LOUIS COUNTY BOARD OF EQUALIZATION, et al., Defendants/Respondents.**

No. 58117.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 29, 1991.

David J. Newburger, Kathryn Render, St. Louis, for plaintiff/appellant.

Robert H. Grant, Dennis C. Affolter, Clayton, for defendants/respondents.

GARY M. GAERTNER, Presiding Judge.

Appellant, Home Builders Association of Greater St. Louis, appeals from an order of the Circuit Court of St. Louis County finding appellant's real property was not held for charitable purposes and was, therefore, not exempt from the ad valorem property tax pursuant to RSMo § 137.100(5). Appellant also appeals the Circuit Court's denial of its claim that respondent, the St. Louis County Board of Equalization, discriminated against it in denying appellant the tax exemption. We affirm in all respects.

Appellant is a not-for-profit corporation which is exempt from Federal Income Tax under § 501(c)(6) of the Internal Revenue Code as a business league. Contributions to appellant are not deductible as charitable donations under Federal law. On May 24, 1985, the St. Louis County Department of Revenue, Division of Assessment, informed appellant that it was assessing certain real property owned by appellant as "commercial" property subject to taxation. Appellant filed a petition for exemption from real estate property tax for the year 1985 asserting that the property was "actually and regularly used exclusively for ... purposes purely charitable and not held for private or corporate profit" pursuant to RSMo § 137.100(5). Respondent denied appellant's petition. Further petitions were also filed for the 1986 and 1987 tax years and were similarly denied.

Appellant appealed the denials of exemption to the Circuit Court of the County of St. Louis pursuant to RSMo § 138.430(2) (1983) and the circuit court consolidated the various actions. A three day hearing was held on April 10, 11 and 12, 1989. On January 26, 1990, the trial court entered its findings of fact and conclusions of law finding the subject property was not used exclusively for charitable purposes. This appeal followed.

The subject property is located at 10104 Old Olive Street Road in Creve Coeur, Missouri, a suburb of St. Louis County. The property contains executive offices, meeting rooms, seminar rooms, a kitchen and ancillary facilities.

Appellant's "Articles of Acceptance" describe appellant as an association of builders and other segments of the building industry and sets forth its purposes as follows:

To develop and maintain within the building industry and the public a high appreciation of the objectives and responsibilities of builders in fully serving the public.

To advocate and encourage the constant improvement of residential and light construction techniques and practices.

To cooperate with other trade associations in all matters related to advancing the building industry.

To advocate the standardization of building codes throughout the metropolitan St. Louis area, the State of Missouri, and throughout the nation.

To work for the elimination of governmental orders improperly restricting the building industry, and to support beneficial governmental directives.

To promulgate and enforce the code of ethics for the members of this association and to encourage each individual to so conduct himself and his business that each will be a credit to the association.

To collaborate with distributors and manufacturers of building materials and equipment to the end that the maximum quality at minimum cost to the consumer may be achieved.

To issue such publications as may be necessary to disseminate information of value to its members, the public and the government.

To serve, advance and protect the welfare of the building industry, in such manner that adequate housing will be made available by private enterprise to all Americans.

The activities of the appellant are extensive. It is basically broken into four affiliated organizations, each of which has offices and staff at the subject property and holds meetings and functions at the subject property. These affiliates include the Home Owner's Warranty Registration Council of Missouri, Inc. (HOW), the Resi-

dential Construction Employers Association (RCE), the Home Building Industry Advancement Fund (HBIAF), and the Home Building Industry Political Action Committee (HBI–PAC).

HOW is an insurance program which covers warranty defects that builders fail to correct. The program is available only to members of appellant through HOW, a for-profit corporation, wholly owned by appellant. HOW includes an arbitration component. When appellant is unable to resolve a dispute between a builder and a homeowner, the homeowner is able to arbitrate the dispute. If the homeowner agrees with the arbitration's results, it is binding on the builder. HOW is extensively used by appellant and its members as a marketing device to sell more homes.

RCE has the primary purpose of negotiating labor contracts for the builder members who assign their bargaining rights to appellant. Appellant also represents members in their labor problems and retains an attorney for this purpose.

HBIAF is a trust fund which financially supports a carpenter apprentice training program. This program is jointly sponsored with the Carpenters Training Advancement Foundation of the Associated Contractors, a commercial building organization. Although HBIAF funds approximately fifty percent of this program, none of the training takes place at the subject property. Appellant is not involved in the project beyond funding.

Students in the carpenter's program are not required to pay any fees. They are trained, initially, in basic skills such as reporting to work on time, dress and conduct on the job. A later apprentice program is also taught in the same manner.

HBIAF also serves as the funding arm of appellant. Pursuant to a labor contract negotiated by RCE, appellant receives twenty-one cents per man hour worked for each carpenter employed by home builders—both members of appellant and non-members. Seventeen cents of this sum is for carpenter training. The balance is spent on other purposes. HBIAF earned large profits in both 1986 and 1987.

Appellant also sponsors other training programs and seminars. Some of these activities take place on the subject property. The training programs include those for residential apartment managers and senior residential managers. The fees charged for the training programs do not always cover the costs and HBIAF makes up any difference. Advertising of these programs is predominantly directed towards members of appellant although members of the public are welcome. The seminars offered by appellant are also often run at a loss with HBIAF making up the difference. The facts below do not make it clear how many seminars are offered per year or how often. The examples given below of the topics covered in the seminars, however, demonstrate that the seminars relate directly to the home building profession, usually to the marketing area.

Governmental affairs constitute a "substantial function" of the appellant. It takes up a large portion of the staff at the subject property. Appellant maintains a legislative representative on retainer and has a permanent state lobbyist. Through its affiliate, HBI–PAC, the appellant supports pro-builder candidates and supports projects that would be to the advantage of its membership.

Appellant also devotes a large number of its staff members to services for appellant's members. These services include the St. Louis New Home Folio (Folio), the Home Shows and the Homer Awards.

Folio is a weekly advertising magazine, currently owned by the St. Louis Post Dispatch, which was developed by appellant to promote the sale of new homes and to save advertisers money. Appellant's members currently continue to meet with the Post Dispatch monthly to assure the successful promotion of new homes in the St. Louis area.

Appellant sponsors two Home Shows annually, one in the Fall and one in the Spring. At the shows, subcontractors and suppliers of building products display their products. The Home Shows serve the pur-

pose of putting a large number of home products in front of interested buyers under one roof.

The Homer Award is an award given by appellant for quality building at a low price. Participation in the program is available only to appellant's members. The categories for the award are numerous, however, and it is a rare occasion that every large builder does not win at least one award. Upon winning an award, the builder is provided with a sign to display notifying the public of its award. Mr. Manes, the President of the appellant, conceded that if everyone wins an award the program is not very educational to the public. Further testimony reveals that some builders are of the opinion that the Homer Awards are "a joke."

Appellant also provides weekly newsletters to its membership to keep them informed of appellant's activities. A tremendous portion of these newsletters is devoted to its governmental affairs. This is also true of appellant's monthly publication, *The Builder's News*. Appellant also publishes an annual roster and Buyer's Guide. In this latter publication, appellant urges its members to only buy from other members of the appellant.

■ Before examining appellant's claim for exemption,[1] this court recognizes several well-established principles. First, taxation is the rule and exemption from taxation is the exception. *United Cerebral Palsy Ass'n. of Greater Kansas City v. Ross*, 789 S.W.2d 798, 799 (Mo. banc 1990). Second, statutes granting exemption from taxation are strictly, but reasonably, construed against the party claiming the exemption. *Id.* Third, claims for exemption are not favored in the law. *Id.* Finally, a property owner who claims the exemption bears a substantial burden to prove that his property falls within the exempted class. *Id.*

RSMo § 137.100(5) states, in part:

137.100. Certain property exempt from taxes

The following subjects are exempt from taxation for state, county or local purposes:

.　　.　　.　　.　　.

(5) All property, real and personal, actually and regularly used exclusively ... for purposes purely charitable and not held for private or corporate profit, ...

■ In determining whether or not a parcel of property qualifies for an exemption under RSMo § 137.100(5), this court must utilize the three-part test set forth in *Franciscan Tertiary Province of Missouri, Inc. v. State Tax Comm'n.*, 566 S.W.2d 213, 224 (Mo. banc 1978). Under this test, the property must first, be actually and regularly used exclusively for purposes purely charitable as defined in *Salvation Army v. Hoehn*, 354 Mo. 107, 188 S.W.2d 826, 830 (1945). Second, the property must be owned and operated on a not-for-profit basis. Finally, the dominant use of the property must benefit society generally as an indefinite number of people. *Franciscan*, 566 S.W.2d at 224. We will now apply this test to the above facts.

In *Salvation Army v. Hoehn*, the Missouri Supreme Court stated:

Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or

---

1. We note that this appeal involves questions of application of a revenue law already construed by the Missouri Supreme Court. See *Franciscan Tertiary Province v. State Tax Comm'n*, 566 S.W.2d 213 (Mo. banc 1978). Article V, § 3 of the Missouri Constitution, which provides that appeals involving the construction of the revenue laws are solely under the jurisdiction of the Missouri Supreme Court, therefore, does not apply. *Affiliated Medical Transport, Inc., v. State Tax Comm'n*, 741 S.W.2d 25, 27 (Mo. banc 1987).

otherwise lessening the burdens of government. * * * *Salvation Army* at 830. Under the first part of the *Franciscan* test, this court must determine whether the subject property is actually and regularly used exclusively in such a manner. *Franciscan* at 224.

■ The trial court found that the primary purpose of appellant was not of a charitable nature but to "improve business conditions for its members, enhance the image of the industry and improve the profit structure of all members." The court further stated that whatever charity resulted from appellant's activities was "incidental, ancillary and insignificant."

Appellant claims that this was error and directs this court to *City of St. Louis v. State Tax Comm'n.*, 524 S.W.2d 839 (Mo. banc 1975) (*Engineers* case) contending that the facts here are so similar that the *Engineers* case controls our result. We disagree.

In the *Engineers* case, the City of St. Louis denied tax exemptions for certain real property owned by the Engineers Club of St. Louis. The main activities of the club included weekly meetings containing technical programs and symposiums on a wide variety of issues. *Id.* at 841–42. The organization further concerned itself with educating engineering students. In addition to these educational pursuits, the Engineers Club also took positions on matters of public concerns. The Club then held symposiums on several of these issues. The symposiums were all open to the public. *Id.* at 842. The State Tax Commission found that only ten percent of the activities of the Engineers Club could not be classified as "educational."

The Supreme Court of this State first noted that education, by lessening the burden on government, falls within the definition of charity. *Id.* at 845. The court then noted that, although members of the Engineers Club may have joined to improve themselves by participating in an educational activity, "the controlling factor is the extent to which such activity is designed to benefit the public and society in general." *Id.* at 846. The court then held that, because the activities of the Engineering Club were predominantly educational, and, because the activities were so clearly designed to benefit the public and society in general, the building of the Engineers Club was exempt from taxation. *Id.* at 846.

The facts in the present case, at first blush, bear some resemblance to those presented in the *Engineers* case. However, each case must stand on its own facts. *United Cerebral Palsy Ass'n.*, 789 S.W.2d at 800. The facts here, despite appellant's protestations to the contrary, are not identical to those in the *Engineers* case. As noted above, the building in *Engineers* was used almost exclusively for education purposes. Here, however, the predominant uses of the building are for governmental affairs and member services. From a staff of twenty-three persons, nine worked in these two areas. Conversely, one person spends half of her time directing appellant's seminars and training programs. Appellant attempts to squeeze its governmental affairs activities under the definition of "education." While lobbying may fall into appellant's definition of education, we have grave doubts that the legislature intended to grant tax exemption to the property of such organizations under RSMo § 137.100(5). We recognize that the governmental affairs division engages in other activities besides lobbying, however, each and every one of those activities appears to be predominantly for the benefit of appellant's members with only incidental benefits to the public.

Appellant's membership services are also claimed to be "educational." We initially note that some of these services, such as the Homer Award, are for members only. We also point out that appellant strongly recommends using its annual roster to deal with only members of the appellant. Finally, we note that what appellant claims to be "educational" appears no different to us than marketing and marketing is quite different from charity. Appellant has simply failed to sustain its burden of proof. Point denied.

Appellant also claims that the trial court focused on the appellant's activities rather than on the use of the property in making its decision. While we recognize that the use of the property is the focus for purposes of exemption, *Sunday School Board of Southern Baptist Convention v. Mitchell*, 658 S.W.2d 1, 5 (Mo. banc 1983), we find that the focus of the trial court clearly was on the use the appellant made of the property and not to the activities of appellant. The fact that most of the trial court's references in its findings of fact and conclusion of law were to appellant were merely due to the fact that appellant owned the property and was its sole user.

Finally, appellant claims that the trial court erred in finding no discrimination against appellant by the Board of Equalization in denying its exemption requests. Appellant claims there were several organizations which used their property in a manner similar to that of appellant that have had their tax exemption requests granted. We have reviewed the evidence offered to the trial court on this issue and find it scant at best. In any case, the fact that the board may have incorrectly granted an exemption to others in the past does not mean it is required to grant appellant an exemption that we have already found it was not entitled to. See *Wyoming Valley Montessori Ass'n., Inc. v. Board of Assessment Appeals*, 532 A.2d 931, 935 (Pa. Cmwlth 1987). Without a finding of intent to discriminate against the appellant, we decline appellant's invitation to find discrimination based solely on such evidence. Point denied.

Affirmed.

CRIST and SIMON, JJ., concur.