**ABBOTT AMBULANCE, INC., Appellant,**

v.

**Ronald A. LEGGETT, Collector, City of St. Louis, Respondent.**

**No. 68616.**

Missouri Court of Appeals,
Eastern District,
Division Two.

May 14, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 26, 1996.

Application to Transfer Denied
Aug. 20, 1996.

James E. Reynolds, Juan D. Keller, John P. Barrie, Carole L. Iles, St. Louis, for appellant.

Anthony J. Sestric, St. Louis, for respondent.

CRAHAN, Presiding Judge.

■ Abbott Ambulance, Inc. ("Abbott") appeals the entry of summary judgment in favor of Ronald A. Leggett, Collector of the City of St. Louis ("Collector"), on Abbott's claim for a refund of 1992 real property taxes paid under protest. Abbott claims it was entitled to a charitable exemption. The sole issue presented is whether unoccupied land owned by a charity which is in the early stages of development for construction of a headquarters building and maintenance garage that will be used for charitable purposes when completed is being "used exclusively ... for purposes purely charitable" and thus exempt from real property taxes pursuant to § 137.100(5) RSMo1994.[1] We hold that the property is exempt and reverse and remand for entry of judgment in favor of Abbott.

The case was submitted to the trial court on cross-motions for summary judgment. There is no dispute about the facts, which were mostly stipulated. Abbott is a Missouri not-for-profit corporation, organized for charitable purposes including the provision of

---

1. All statutory references are to RSMo 1994 unless otherwise indicated. Jurisdiction lies with this court as this case involves the application of a revenue statute previously construed by the Supreme Court of Missouri. *Affiliated Medical Transport v. State Tax Commission of Missouri,* 741 S.W.2d 25, 27 (Mo. banc 1987).

"mobile medical and emergency transport and emergency medical services to members of the community throughout the metropolitan St. Louis and surrounding areas." Abbott is classified by the Internal Revenue Service as a tax-exempt charity described in §§ 501(c)(3) and 509(a)(3) of the Internal Revenue Code of 1986, as amended. Abbott is also exempt from Missouri sales/use tax pursuant to §§ 144.030.2(19) and 144.615.

On July 23, 1991, Abbott acquired vacant, unimproved real property in the City of St. Louis for the sole purpose of erecting a headquarters facility on the property. The headquarters facility erected by Abbott included administrative office space, as well as an ambulance garage, which since its construction has been used solely for maintaining and parking ambulances.

Abbott was the owner of the property on January 1, 1992, the date for assessing and taxing real property for 1992. § 137.080. By January 1, 1992, Abbott had, among other things, (1) entered into a Grading Agreement with Midland Equity, Inc. dated July 23, 1991 for the site preparation and grading of the property; (2) negotiated and executed a Letter of Intent dated December 19, 1991 with Webbe Corporation, a design-build construction contracting firm, for the design and construction of the headquarters facility on the property; and (3) moved substantial amounts of earth on the property pursuant to the Grading Agreement, which was approximately 30% performed or completed as of the January 1, 1992 assessment date.

Construction of the headquarters facility was completed and Abbott began moving into the facility on November 27, 1992. At all times prior to November 27, 1992, Abbott had the express intention of using the property for construction of the headquarters facility. Abbott has never used the property for any purpose other than construction and operation of the headquarters/garage facility and has never leased any part of the property to a third party or received any rentals or other income from any part of the property.

Abbott filed an application for Recognition of Exemption from Property Taxes for the property with Collector. Collector placed the property on the tax-exempt rolls of the City of St. Louis as of January 1, 1993 but refused to place the property on the tax-exempt rolls as of January 1, 1992. Abbott submitted a protest letter accompanied by a tender of the property taxes, interest, and fees demanded by Collector. Abbott then filed a petition for recovery of taxes paid under protest and for declaratory judgment in the Circuit Court of the City of St. Louis. Collector and Abbott filed cross-motions for summary judgment. The trial court sustained Collector's motion and denied Abbott's motion. Abbott appealed.

Abbott's sole contention on appeal is that the trial court erred in finding that the property was not exempt from taxation as of January 1, 1992. Our review on summary judgment is essentially *de novo* and the criteria we apply are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion for summary judgment initially. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). In this case, the trial court found and the parties agree that there are no genuine issues of material fact. Thus, the issue of whether Abbott is entitled to an exemption is purely a question of law.

The property tax exemption at issue is authorized by Article X, Section 6 of the Missouri Constitution of 1945, which provides in part:

> ... all property, real and personal, not held for private or corporate profit and used exclusively ... for purposes purely charitable ... may be exempted from taxation from general law.

Pursuant to this constitutional provision, the Missouri legislature has enacted § 137.100, which states in relevant part:

> The following subjects are exempt from taxation for state, county or local purposes:
> ... (5) All property, real and personal, actually and regularly used exclusively for religious worship, for schools and colleges, or for purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organi-

zation but held or used as investment even though the income or rentals received therefrom is used wholly for religious, educational or charitable purposes;....

(emphasis added).

■ Taxation of property is the rule and exemption is the exception to this rule. *Affiliated Medical Transport v. Tax Commissioner*, 755 S.W.2d 646, 649 (Mo.App.1988). The law disfavors exemption from taxation. *Id.* Statutes granting exemption for taxation are to be construed strictly, but reasonably, against the party claiming the exemption. *Iron County v. State Tax Commission*, 437 S.W.2d 665, 668 (Mo.1968).

■ In *Franciscan Tertiary Province of Missouri, Inc., v. State Tax Commission*, 566 S.W.2d 213, 224 (Mo. banc. 1978), the Missouri Supreme Court established criteria for determining the tax status of property under § 137.100(5). The court held: (1) the property must be dedicated unconditionally to charitable activities; (2) the property must be owned and operated on a not-for profit basis; and (3) the dominant use of the property must be for the benefit of an indefinite number of people and there must be a direct or indirect benefit to society. *Id.* The charitable use exemption depends upon the use made of the property and not solely on the stated purposes of the owner. *Bethesda General Hospital v. State Tax Commission*, 396 S.W.2d 631, 633 (Mo.1965).

■ There is no dispute that the property is currently used exclusively for charitable purposes and qualifies for exemption pursuant to the test set forth in *Franciscan*. What is at issue is whether the grading of the lot and the activities associated with the development and construction of the headquarters/garage facility show sufficient dedication, operation and use of the property for charitable purposes as of January 1, 1992 so as to warrant an exemption for that calendar year.

We have not been cited nor have we discovered any Missouri cases directly on point. Abbott relies chiefly on two cases, *Bethesda, supra*, and *Spelman/St. Luke's Hospital Corp. v. Platte County Board of Equalization*, 812 S.W.2d 196 (Mo.App.1991). Both are instructive.

In *Bethesda*, the issue was whether individual residential properties owned · by Bethesda General Hospital, a charitable corporation, and occupied rent-free by certain key hospital personnel were sufficiently connected with the hospital's charitable purpose to qualify for exemption under § 137.100(5). The residences were nearby but separate from the property on which the hospital was located and were not used directly for any hospital function. The Missouri Supreme Court held that the provision of residences occupied by key personnel, who were necessary to the efficient operation of the hospital and needed to be located nearby, was sufficiently connected to the hospital's charitable purpose to justify the claimed exemption under § 137.100. 396 S.W.2d at 635.

In *Spelman*, cited and relied upon by both parties, the taxpayer sought exemption for a newly constructed hospital building, built by a for-profit company but purchased before it commenced operations by a charitable entity for operation as a not-for-profit hospital. 812 S.W.2d at 196. Construction had been completed as of the assessment date but the hospital had not yet begun treating patients. *Id.* at 197. The hospital was, however, in the process of hiring staff, some of whom were already at work preparing for admission of patients. *Id.* The court held that operation of the hospital in preparation for the admission of patients was a charitable use and allowed the claimed exemption.

Abbott reasons that *Bethesda* supports exemption of the property in this case because it authorizes an exemption for a use of property that would not qualify for exemption standing alone, provided that the use is necessary to accomplishment of the overall charitable purpose. Construction of a facility for administrative functions and maintenance and garaging of ambulances is likewise necessary to Abbott's overall charitable purpose of providing ambulance services on a not-for-profit basis. Abbott maintains that *Spelman* supports exemption by recognizing that use of property in preparation for the rendition of charitable services is itself a charitable use. Abbott reasons that use of the property

for construction of a facility which will be used to provide its services is therefore a charitable use.

Collector urges that *Spelman* is not controlling because in *Spelman*, the hospital was completed, equipment had been partially installed, staff was either being hired or was in place, and patients were being served.[2] According to Collector, the exemption was allowed because the property had reached the point where it could not be converted to uses other than a hospital. This was essentially the reasoning adopted by the trial court. In its judgment, the trial court found that exemption should be allowed from the time at which "no reasonable charitable organization would stop construction or shift to a non-exempt purpose." The trial court found that Abbott "had not completed enough of its proposed construction project to leave no reasonable use for the land other than the intended charitable purpose." Noting that land that is simply construction ready could still be used for many purposes from a parking lot to an office building or even sold for profit as a vacant lot, the trial court held that Abbott was not entitled to the exemption because the facility was not "substantially complete."

■ We can find nothing in *Spelman* or any other Missouri case which supports this test as the standard for determining whether an exemption is appropriate. Nor do we discern any basis for engrafting such a requirement. As Abbott points out, under the express language of § 137.100(5), whether property is to be exempted is determined by reference to the actual and regular use by the owner. Construction and other activities in preparation for the rendition of charitable services are either charitable uses or they are not; the imminence of the rendition of charitable services is immaterial. Likewise, there is no requirement in the statute that the owner prove that all conceivable future uses will be charitable. If that were the case, no property could ever qualify for exemption because every tax-exempt owner has the right to sell the property to a non-exempt

user. Nor does a requirement of "substantial completion" provide any assurance of charitable use. Just as the tax-exempt taxpayer in *Spelman* purchased the nearly completed hospital from a non-exempt entity, so too might a tax-exempt enterprise decide to sell a completed hospital to a group of doctors who plan to operate it for a profit. Even after the construction was completed, the facility at issue in this case is not unique and presumably would be suitable for either charitable or non-charitable uses. Basing the exemption on the extent of construction thus bears no necessary relationship to the purpose to which the property may ultimately be devoted. In any event, under the plain language of the statute it is the purpose for which the owner actually uses the property that is controlling, not the potential purposes for which the property could conceivably be used.

In this case, it is undisputed that from the outset Abbott's actual use of the property has been for construction and, ultimately, operation of the property as a headquarters facility and garage and maintenance center for its ambulances. Activities essential to accomplishment of that purpose were underway prior to the assessment date. There is not a scintilla of evidence that Abbott held the property for investment purposes or had even considered any other use. It is conceded that Abbott's use of the property since construction was completed qualifies for exemption. Abbott's use of the property in constructing the facility as a prerequisite to such use should likewise be considered a charitable use.

Although not controlling, we note that other states with comparable statutory provisions have consistently taken the view that construction of a facility to be used for charitable purposes is itself a charitable use. In *Hedgecroft v. City of Houston*, 150 Tex. 654, 244 S.W.2d 632 (1951), for example, the Texas Supreme Court found that remodeling of a home into a not-for-profit clinic was sufficient use of the property so as to warrant an exemption. The court noted that the prepa-

---

**2.** Collector's contention that patients were being served as of the assessment date is incorrect. The court specifically stated that the hospital was

preparing for the admission of its first patient. 812 S.W.2d at 198.

ration for operation was indispensable to the use of the clinic. *Id.* The court held that a comparable statutory provision allowing exemption for the contemplated activity likewise exempts the property during bona fide necessary preparation. *Id.* at 636.

In *Utah County v. Intermountain Health Care,* 725 P.2d 1357 (Utah 1986), the Utah Supreme Court followed the reasoning of *Hedgecroft* and allowed a tax exemption for a hospital during its construction. The court reasoned that the benefits conferred on the public by charities can only be diminished, to a greater or lesser extent in the long run, if monies committed to the charity must be used to pay *ad valorem* property taxes. *Id.* at 1359.

The Pennsylvania Supreme Court has likewise held that construction of facilities by a charity constitutes use for purposes of their similar exemption statute. *Overmont Corporation v. Board of Tax Revision of the City of Philadelphia,* 479 Pa. 249, 388 A.2d 311 (1978). Indeed our research has not disclosed a single case denying an exemption in a case with comparable statutory provisions and comparable facts. *See Village of Hibbing v. Commissioner of Taxation,* 14 N.W.2d 923, 926–27 (Minn.1944); *Carney v. Cleveland City School District Public Library of Cuyahoga County,* 169 Ohio St. 65, 157 N.E.2d 311 (1959); *City of Richmond v. Richmond Memorial Hospital, et al.,* 202 Va. 86, 116 S.E.2d 79 (1960); *In re Assessment of Property,* 202 Okl. 174, 211 P.2d 534 (1949); *Cleveland Memorial Medical Foundation v. Perk,* 10 Ohio St.2d 72, 225 N.E.2d 233 (1967); *In re Dana W. Morey Foundation,* 21 Ohio App.2d 230, 256 N.E.2d 232 (1970); and *Young Womens Christian Association of Rochester and Monroe County v. Wagner,* 96 Misc.2d 361, 409 N.Y.S.2d 167 (N.Y.Sup.Ct. 1978).

In *Bethesda,* the Missouri Supreme Court noted that charitable exemptions are given in return for the performance of functions which benefit the public, with consequent relief, to some extent, of the burden imposed on the state to care for and advance the interests of its citizens. 396 S.W.2d at 633–34. Denial of an exemption during construction of a facility which is to be used for an unquestionably charitable activity necessarily increases the cost, thereby diminishing the charity's ability to carry out its activities for the benefit of the public. Indeed, as Abbott points out, it subjects the charity to taxation on the property at the point it is least able to pay because the property is not likely to produce any revenue during construction. Such a result is inconsistent with the purpose of the exemption and, as discussed above, with the plain language of the statute.

For the foregoing reasons, we reverse the judgment and remand with directions to enter judgment for Abbott.

CRANDALL and DOWD, JJ., concur.